CHINA & JAPAN TRADING CO. v. DAVIS et al.

(Circuit Court of Appeals, Fifth Circuit. December 16, 1902.)

No. 1,192.

1. SALES—CONTRACT—ACCEPTANCE OF OFFER.

Plaintiff, a cotton exporter, instructed defendants, cotton buyers, to make engagement of freight room simultaneously with sales to plaintiff. Defendants telegraphed an offer of cotton, saying nothing as to freight room, which was accepted by plaintiff by telegraphing, "The offer is accepted * * * steamer space to Japan," and by writing, "Our acceptance was conditioned upon your fixed freight engagement with the steamer space secured to Japan. * * * We cannot take the risk of having cotton held up by the railroads." Later, on learning that freight room had not been secured, plaintiff wrote: "We are not pleased with your carelessness in the matter of freight. * * * You had our letter of general instructions, * * * in which it was specifically stated that freight engagement must be made at the time of selling us the cotton. * * * We are at a loss to see why you should have run this risk." Defendants then wrote, canceling the contract, and more than two months later plaintiff denied receiving this letter, and insisted on performance. Meanwhile the price of cotton had steadily advanced. *Held*, that there was no such unconditional acceptance by plaintiff of the offer of sale as would consummate the contract and sustain plaintiff's action for breach.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

The China & Japan Trading Company filed suit against C. G. Davis & Co. alleging that Davis & Co. had sold to it 500 bales of cotton at a stated price, and that Davis & Co. refused to deliver the cotton, to plaintiff's damage $6,000. Davis & Co. answered that the contract was never completed. The China & Japan Trading Company was a corporation located in New York and engaged in exporting cotton to Japan and China. C. G. Davis and J. A. Smith, composing the firm of C. G. Davis & Co., were cotton buyers in Pittsburg, Tex. It appears that the parties had been dealing together during the cotton season of 1898, and on July 11, 1899, the China & Japan Trading Company addressed two letters to Davis & Co., explaining the conditions on which they would buy cotton for export. The opening sentence of one letter is as follows: "We shall expect you to make your engagement of freight room simultaneously with your sales to us, covering through shipment and transshipment to destination." "Shipment must be made within the time contracted for; neither earlier nor later." On August 18th Davis & Co. sent this telegram: "We offer f. o. b. and freight 500 bales middling at 6 1-8. Oct.–Nov. or Nov.–Dec. shipment." The trading company replied as follows: "The offer is accepted. 500 bales middling at 6 1-8. Cost and freight. Oct.–Nov. shipment. Steamer space secured to Japan." On the same day the trading company wrote, confirming the purchase, and in the letter stated: "Our acceptance was conditioned upon your fixed freight engagement with the steamer space secured to Japan, which you will understand in the light of last year's experience. We cannot take the risk of having cotton held up by the railroads, and shipped to the Pacific coast at their convenience." Before the last letter was received by Davis, he had written on August 19th as follows: "Inclosed please find copy of telegrams exchanged resulting in sale to you of 500 bales, for which sales note herewith. We are now at work trying to engage the room for same, which we shall no doubt succeed in doing within the next few days. Last year we had some difficulty in securing the requisite room to cover our shipments, and in this connection we would ask if you could not be of some assistance to us should we encounter the same difficulty this season. You are large shippers over the Pacific S. S. lines, and it strikes us that you could possibly obtain room where we cannot.

There will be several vessels out of Galveston to Japan via Suez. Will it be agreeable to you to ship any of your cotton by this way?" On August 22d the trading company replied as follows: "We are surprised to learn that you made this sale to us without having freight engagement in hand, and that in the very trying position of the freight market now you are short room. With every desire to help you, we find ourselves quite powerless. * * * Noting your suggestion to ship via Suez, we remind you that this route is more expensive to us in marine insurance and interest, and we must charge you 1 per cent. allowance if you make that shipment. We will accept from you on this contract October–November shipment by way of Galveston or New Orleans on a steamer direct to Japan, not by way of New York or European ports, if you will make us this allowance. Let us know what arrangement you make." To this Davis & Co. replied August 25th: "In reply to your valued favor of the 22d will say we have the promise of room for 500 bales sold you, and believe we will get it. Our inquiry as to Gulf shipment was made for our information. The freight via this route is against us by 50 cts. a bale, and to allow you one per cent. additional would be quite a hardship on us. If, however, we should be compelled to ship that way, will stand the difference rather than fail on our contract." The trading company replied on August 28th, expressing surprise that freight by the Gulf should be higher, and then stated: "We are not pleased with your carelessness in the matter of freight on this lot of cotton. You had our letter of general instructions before you, in which it was specifically stated that freight engagements must be made at the time of selling us the cotton. With this warning, and the experiences of last year fresh in mind, we are at a loss to see why you should have run this risk." C. G. Davis testified that he wrote the following letter to plaintiff on the 2d of September, 1899: "We note contents of your valued favor of the 28th of August. In view of the fact that you consider our sale to you based upon condition that freight has been engaged for same, and as you express yourself as not pleased that this condition has not been complied with in this instance, we hereby cancel the same. We do this rather than have any dissatisfaction about the matter. In future we will confine our offers to you strictly in accordance with the terms of the contract, as we see that you are disposed to exact the terms thereof very rigidly. Such letter was addressed to plaintiff, and stamped, and placed in the post office at Pittsburg, Texas, on September 2, 1899, in an envelope with our address, and a request to return printed on it. The letter was not returned to us." Howard Ayres, secretary of the trading company, testified that plaintiff did not receive the letter of September 2d. He further testified: "Our purchase of August 18, 1899, was made upon the conditions stated in our letter of July 11, 1899, and the condition as to the engagement of steamer space was also referred to in our telegram of August 18, 1899, and in the letter of same date." No inquiry was made by the China & Japan Trading Company about the 500 bales of cotton in question from August 28th to November 13th, although in the meantime several communications passed between them as to other shipments. On November 13th the trading company wrote Davis & Co. as follows: "We are constrained to ask you when you are likely to ship the 500 bales of middling sold us August 18th for October–November delivery?" Davis replied on November 20th, and referred them to his letter of September 2d, in which he had canceled the contract. The trading company replied that they had not received the letter of September 2d, and would not have considered the contract canceled if they had received it; stating: "It took two to make the contract, and it will take two to cancel it. We trust you will make prompt shipment of this 500 bales middling due us under our contract of August 18th, and doubtless you will be able to secure freight room. Indeed, we are continually receiving offers of freight room by all the Pacific routes, as well as by way of Suez, and there seems to be no difficulty in making shipment." When Davis had asked them to assist him in getting shipping space on August 19th, they replied on August 22d that they could not help him.

119 F.—44

John W. Thompson and M. L. Morris, for plaintiff in error.

F. H. Prendergast, for defendants in error.

Before PARDEE and SHELBY, Circuit Judges, and BOAR-MAN, District Judge.

PER CURIAM. While in the letters of July 11th the trading company gave notice that engagements of freight room covering through shipment and transshipment to destination should be simultaneous with sale to the trading company, yet in the offer by the telegram of Davis & Co. of August 18th no engaged freight room was either promised or suggested. It may be that, as the offer was optional as to destination, China or Japan, and as to October-November or November-December shipment, it was impracticable to promise or guaranty freight room in advance of the trading company's absolute acceptance. The trading company's telegram of August 18th and its letter of the same date make the acceptance of Davis & Co.'s offer conditional upon Davis & Co. having secured fixed freight engagement and steamer space to Japan, and in the letter reasons are given why the acceptance was thus made conditional upon the secured freight space. The case shows that the trading company did not waive, but always insisted upon, this condition, and in its letter of August 28th it deals with the matter in this language:

"We are not pleased with your carelessness in the matter of freight on this lot of cotton. You had our letter of general instructions before you, in which it was specifically stated that the freight engagement must be made at the time of selling us the cotton. With this warning and the experiences of last year fresh in mind, we are at a loss to see why you should have run this risk."

This letter, in connection with the letter claimed by plaintiff to be an acceptance, is absolutely inconsistent with the proposition now necessary to maintain plaintiff's case, to wit, that Davis & Co.'s offer of August 18th was unconditionally accepted. If that offer was unconditionally accepted, why the specific reservation in the letter of August 18th, and why, as late as August 28th, write about the carelessness and risk of Davis & Co. because they had not previously engaged freight space to Japan? We see no reason to doubt that Davis & Co. by letter of September 2d, canceled the offer. Even if the trading company never received the letter canceling the offer, its silence as to delivery, under the alleged contract of August 18th, from August 28th to November 13th following, while cotton was steadily advancing, is very significant.

The trial judge concluded that the contract was never accepted so as to be binding upon both parties, and properly instructed a verdict for the defendant, and the judgment upon that verdict is affirmed.